**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | Case No. 14 C 7430 |
| v. | ) | |
| | ) | |
| BRUCE WHITTLER, | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On September 22, 2014, pro se Petitioner Bruce Whittler filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Whittler's § 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**PROCEDURAL BACKGROUND**

On December 14, 2010, a grand jury returned an indictment charging Whittler with one count of conspiracy to knowingly and intentionally possess with intent to distribute and to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count One), three counts of knowingly and intentionally using a communications facility, namely, a cellular telephone, in committing a narcotics felony in violation of 21 U.S.C. § 843(b) (Counts Two, Four, and Six), and two counts of knowingly and intentionally possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts Three and Five ). On October 13, 2011, Whittler pleaded guilty to Count One pursuant to a written plea agreement. On July 16, 2012, the Court sentenced Whittler to 92 months in prison.

On July 27, 2012, Whittler filed a notice of appeal. On appeal, Whittler argued that the Court miscalculated his guidelines range by applying an upward adjustment for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). On June 27, 2013, the United States Court of Appeals for the Seventh Circuit affirmed Whittler's sentence. *See United States v. Whittler*, No. 12-2756, 528 Fed.Appx. 623 (7th Cir. June 27, 2013) (unpublished). On September 22, 2014, Whittler filed the present pro se § 2255 motion. Construing his pro se § 2255 motion liberally, *see Ambrose v. Roeckeman,* 749 F.3d 615, 618 (7th Cir. 2014), Whittler brings a Sixth Amendment ineffective assistance of trial counsel claim based on counsel's failure to move to suppress intercepted calls on the ground that the government failed to establish the necessity for a wiretap.

## FACTUAL BACKGROUND

In March 2009, Whittler began selling crack cocaine supplied by his cousin, Robert Jones. On three occasions during the summer of 2009, the government submitted applications for orders authorizing the interception of wire communications regarding two phones used by Robert Jones and one phone use by another co-conspirator, Marcus Jones.

### I.    June 1, 2009, Application and Affidavit

On June 1, 2009, the government submitted applications for orders authorizing the interception of wire communications regarding two phones, Target Phone 1, which was used by Marcus Jones, and Target Phone 2, which was used by Robert Jones. The applications were supported by FBI Special Agent Christopher Soyez's affidavit. In particular, Agent Soyez's affidavit described the FBI's investigation to date, which included that a confidential source ("CS-1") made three cocaine purchases from Marcus Jones, one cocaine purchase from Marcus

Jones and Robert Jones together, and another cocaine purchase from Robert Jones. Further, Soyez's affidavit described information that CS-1 provided regarding Robert Jones, Marcus Jones, and some of their associates. The affidavit, however, did not include any information regarding Whittler, who had not been identified as a violator or interceptee at that time.

In his June 1, 2009, affidavit, Agent Soyez also explained the need for interception of wire communications as the "only available investigative technique that has a reasonable likelihood of securing evidence necessary to prove beyond a reasonable doubt that the Violators and others as yet unknown" were committing drug offenses. More specifically, he discussed CS-1's information and the limitations on CS-1's ability to provide additional information, including (a) CS-1's not being in a position to purchase from or identify Robert Jones' supplier(s), and (b) CS-1's inability to engage in narcotics purchases from others purchasing drugs from Robert Jones and Marcus Jones.

On June 1, 2009, the Chief Judge entered orders authorizing the interception of wire communications over Target Phone 1 and Target Phone 2.

## II. July 20, 2009, Application and Affidavit

On July 20, 2009, the government submitted an application for orders authorizing the interception of wire communications regarding Target Phone 4—a phone that Robert Jones had recently begun using. Another Agent Soyez's affidavit supported this application. More specifically, Agent Soyez's June 20, 2009, affidavit described the FBI's investigation to date, including calls intercepted over Target Phone 1 between Marcus Jones and Robert Jones and calls between Marcus Jones and Whittler. In addition, Agent Soyez averred that no calls were intercepted on Target Phone 2 due to Robert Jones ceasing the use of that phone shortly before

3

the June 1, 2009, order.  Further, Agent Soyez described two calls between Marcus Jones and Whittler.  In one call on June 9, 2009, Whittler and Marcus Jones discussed whether Marcus Jones was holding any narcotics and whether Marcus Jones asked Whittler to bring him narcotics.  In another call made on June 24, 2009, Whittler warned Marcus Jones not to go to a bar in Robbins, Illinois because police were there.

Furthermore, Agent Soyez averred that there was a need for continuing interception of wire communications.  Specifically, he stated that interception of Target Phone 4 was necessary to identify Robert Jones' source of supply and customers.  The affidavit also discussed CS-1 and his inability to assist in providing evidence against anyone besides Robert Jones or Marcus Jones.  On July 20, 2009, the Chief Judge entered orders authorizing the interception of wire communications over Target Phone 4.

### III.     August 18, 2009, Application and Affidavit

On August 18, 2009, the government submitted an application for orders authorizing the continuing interception of wire communications regarding Target Phone 4, a phone that Robert Jones continued to use.  Agent Soyez's August 18, 2009, affidavit supported this application.  In particular, Agent Soyez described the FBI's investigation to date, including calls between Robert Jones and unidentified individuals and an August 7, 2009, call intercepted over Target Phone 4 between Robert Jones and Whittler.  The call between Robert Jones and Whittler discussed crack cocaine that Robert Jones had provided Whittler and that Whittler had distributed the crack cocaine for his customers.  Whittler also asked Robert Jones for more narcotics.

Agent Soyez also averred that there was a need for continuing interception of wire communications over Target Phone 4 as the "only available investigative technique that has a

4

reasonable likelihood of securing evidence necessary to prove beyond a reasonable doubt that the Violators and others as yet unknown" were committing drug offenses. In his August 18, 2009, affidavit, Agent Soyez acknowledged that the investigation had established that Whittler and others were involved in the distribution of cocaine and crack cocaine, but that the full scope of the organization and the roles each individual played was unknown. Also, Agent Soyez averred that the investigation had not uncovered Robert Jones' supplier and that CS-1's role in the investigation could not be expanded because CS-1 had relocated from Robbins, Illinois.

On August 18, 2009, the Chief Judge entered orders authorizing the interception of wire communications over Target Phone 4.

### IV. Additional Investigative Steps

The government did not seek orders for additional interceptions of any phone used by Robert Jones following the intercepts authorized by the August 18, 2009 orders. In October 2009, the government confronted Robert Jones after which Robert Jones agreed to cooperate and made recordings against at least one of his suppliers. Also, Robert Jones provided information about drug-traffickers, including Whittler.

On November 22, 2010, Whittler was arrested pursuant to an arrest warrant. Subsequent to his arrest, Whittler waived his *Miranda* rights and admitted, among other things, that he had sold cocaine for approximately one month in the fall of 2009. In his written plea agreement, Whittler admitted to conspiring with Robert Jones from March through October 2009 to possess with the intent to distribute and to distribute crack cocaine. In addition, Whittler admitted to two particular instances in which Robert Jones supplied him cocaine—on August 11, 2009 and August 29, 2009.

5

## LEGAL STANDARD

"Relief under [§ 2255] is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States,* 723 F.3d 870, 878-79 (7th Cir. 2013). In other words, under § 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). Accordingly, a § 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (relief under 2255 "will not be allowed to do service for an appeal"). Nevertheless, because claims of ineffective assistance of counsel often involve evidence outside of the trial record, such claims may be brought for the first time in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Flores,* 739 F.3d 337, 341 (7th Cir. 2014).

## ANALYSIS

Whittler brings an ineffective assistance of trial counsel claim in violation of the Sixth Amendment. To establish constitutionally ineffective assistance of trial counsel, Whittler must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v.*

*Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted). To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding," instead trial counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Morgan v. Hardy,* 662 F.3d 790, 802 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687, 693). If Whittler fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

In the present pro se § 2255 motion, Whittler specifically argues that his trial counsel was constitutionally ineffective for not moving to suppress intercepted calls on the ground that the government had failed to establish the necessity of a wiretap. "[T]o obtain authorization for a wiretap, the government must make 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *United States v. Durham,* 766 F.3d 672, 679 (7th Cir. 2014) (quoting 18 U.S.C. § 2518(1)(c)). "While this necessity requirement discourages the use of wiretaps as a first-line investigative tool in the mine run of cases, it 'was not intended to ensure that wiretaps are used only as a last resort in an investigation.'" *United States v. Long,* 639 F.3d 293, 301 (7th Cir. 2011) (citation omitted). "The government's burden 'is not great,'

7

and compliance with this requirement is analyzed in a "practical and common-sense fashion.'"
*Durham,* 766 F.3d at 679 (citation omitted). "The statute does not require the government to show absolute necessity, the point is to ensure that wiretaps are not used routinely as the first step in an investigation." *Id.* (internal citation omitted).

In response to Whittler's § 2255 motion, the government submitted its three applications for orders authorizing the interception of wire communications regarding the phones used by Whittler's co-conspirators. FBI Special Agent Soyez's highly-detailed affidavits support the applications. Specifically, Agent Soyez's affidavits set forth explanations of the FBI's investigation into the drug trafficking conspiracy and the need for the wiretap and continued wiretaps to uncover the scope of the drug trafficking scheme involving Whittler, Robert Jones, and Marcus Jones. The June 1, 2009, affidavit, for example, indicated that interviews and subpoenas involved in the drug-trafficking scheme would alert the targets of the investigation resulting in the possible destruction of evidence or the targets fleeing further investigation and prosecution. The July 20, 2009, and August 18, 2009, affidavits demonstrated the continuing need for the wiretaps, especially in conjunction with identifying the drug suppliers. In sum, Agent Soyez's affidavits set forth sufficient explanations to conclude that the wiretaps would produce relevant evidence and that any alternative investigative methods would be inadequate.

Under the circumstances, the government met the "necessity requirement" by providing a detailed explanation via the three affidavits that the wiretapping was necessary to its investigation of the drug trafficking scheme. *See United States v. Moreland*, 703 F.3d 976, 981 (7th Cir. 2012). Accordingly, any motion to suppress would have been futile. *See A.M. v. Butler,* 360 F.3d 787, 795 (7th Cir. 2004) ("If there was no underlying constitutional violation, a

8

motion to suppress would have been futile and counsel could not be viewed as ineffective for failing to present such a motion.") (citation omitted); *see also Peterson v. Douma,* 751 F.3d 524, 533 (7th Cir. 2014) (Sixth Amendment does not require counsel to make meritless arguments). Therefore, counsel's decision not to move to suppress this evidence fell well within the range of reasonable professional assistance. *See Strickland,* 466 U.S. at 690. Accordingly, Whittler's ineffective assistance of trial counsel claim fails.

## II.     Evidentiary Hearing

Because the motion, files, and records of this case conclusively show that Whittler is not entitled to any relief under § 2255, the Court need not hold an evidentiary hearing under the circumstances. *See Yu Tian Li,* 648 F.3d 524, 532 (7th Cir. 2011); *Koons v. United States,* 639 F.3d 348, 354-55 (7th Cir. 2011); 28 U.S.C. § 2255(b).

## III.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Whittler a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order. *See Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his § 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). A petitioner is entitled to a certificate of appealability only if he can make a substantial

showing of the denial of a constitutional right.  *See id.* at 336; *Fleming,* 676 F.3d 621, 625 (7th Cir. 2012).  Under this standard, Whittler must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Whittler has not established that jurists of reason would debate that the Court should have resolved his ineffective assistance of trial counsel claim differently, especially because any motion to suppress the wiretap evidence would have been futile.  Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:**  January 5, 2015

**ENTERED**

*/s/ Amy J. St. Eve*
**AMY J. ST. EVE**
**United States District Court Judge**